UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARIA MORALES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No.: 1:19-CV-8-CLC-SKL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**M E M O R A N D U M**

On January 1, 2019, Maria Morales ("Petitioner") filed a timely *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 on the following four grounds: (1) the grand-jury proceedings were improper; (2) her guilty plea was invalid because it was coerced; (3) she had ineffective assistance of counsel as to the sentencing enhancement for undue influence; and (4) her guilty plea was invalid because her conduct did not satisfy the elements of the offense and because she was incompetent. (Doc. 1.) Petitioner asks for an evidentiary hearing. (*Id.* at 12.) The United States (the "Government") has responded in opposition. (Doc. 8.) Petitioner has not replied, and the time to do so has expired. (*See* Doc. 3 (giving Petitioner thirty days from the filing of the Government's answer to file an optional reply).)

For the reasons set out below, the Court will **DENY** Petitioner's 28 U.S.C. § 2255 motion.

**I.    BACKGROUND**

On October 9, 2014, Petitioner introduced a fourteen-year-old female and a fifteen-year-old female to Petitioner's former pimp, codefendant John Farmer Jr. ("Farmer"). (Doc. 46 in Case No. 1:14-cr-110 [Plea Agreement] ¶ 4(a).) For the next five days, if not before, Petitioner was with the fourteen-year-old most of the time and had a reasonable opportunity to observe that she

was a minor.  (*Id.* ¶ 4(c).)  Petitioner later admitted that she doubted either of the females was eighteen or older.  (*Id.*)  During the same timeframe, Farmer was providing methamphetamine to the fourteen-year-old.  (*Id.*)

On October 14, 2014, five days after Petitioner introduced the minors to Farmer, Farmer posted an advertisement titled "College Girls Gone Wild!" on Backpage.com featuring pictures of the two minors and including language indicating availability for sexual services and an hourly rate.  (*Id.* ¶ 4(a).)  An undercover detective called the listed phone number the same day.  (*Id.*)  Petitioner answered the phone, and she and the detective negotiated a deal in which the caller would pay four hundred dollars to have sex with two females.  (*Id.*)  Farmer drove Petitioner and the two minors to the negotiated hotel.  (*Id.* ¶ 4(b).)  When one of the minors was reluctant to participate, Petitioner and the other minor went into the hotel intending to engage in commercial sex with the purported client.  (*Id.*; *see also* 89 in Case No. 1:14-cr-110 [Presentence Investigation Report ("PSR")] ¶ 10.)  Farmer and the first minor stayed in the car.  (Plea Agreement ¶ 4(b).)  The undercover detective identified himself as a police officer and all four individuals—Petitioner, Farmer, and the two minors—were detained.  (*Id.*)

Petitioner was called to testify before a federal grand jury regarding these events.  (PSR ¶ 20.)  Although the Government initially treated Petitioner as a cooperator, she was ultimately indicted because she gave inconsistent statements to the grand jury.  (*Id.*)  On November 4, 2014, the grand jury charged Petitioner in four counts of a superseding indictment: (1) conspiring to commit sex trafficking through force, threat of force, fraud, and coercion (Count One); (2) conspiring to commit sex trafficking of a minor (Count Two); (3) aiding and abetting sex trafficking through force, threat of force, fraud, and coercion (Count Three); and (4) aiding and abetting the sex trafficking of a minor (Count Four).  (Doc. 12 in Case No. 1:14-cr-110.)

2

Petitioner and the Government entered a plea agreement pursuant to which Petitioner would plead guilty to Count Four of the Superseding Indictment. (Doc. 46 in Case No. 1:14-cr-110 ¶ 1.) The Government agreed to move to dismiss the remaining counts against her at the time of sentencing. (*Id.* ¶ 2.) The Government also agreed not to oppose a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) and to move for a reduction of one additional level under USSG § 3E1.1(b). (*Id.* ¶ 7.)

Petitioner pleaded guilty to Count Four of the Superseding Indictment in a hearing before the Magistrate Judge on May 6, 2015. (Docs. 51, 53, & 103 in Case No. 1:14-cr-110.) During the hearing, Petitioner stated under oath that no one had tried in any way to force her to plead guilty or threatened her to plead guilty, and that she was pleading guilty of her own free well. (Doc. 103 in Case No. 1:14-cr-110 at 11 lines 9–10, 12, 19–20, 22.) The undersigned accepted Petitioner's guilty plea to Count Four on July 28, 2015. (Doc. 63 in Case No. 1:14-cr-110.)

The Court conducted a sentencing hearing on March 23, 2016. (Doc. 111 in Case No. 1:14-cr-110.) Petitioner, through counsel, filed a written objection to the application of a two-level enhancement for undue influence under USSG § 2G1.3(b)(2)(B) and argued this objection at length during the hearing. (Doc. 68 in Case No. 1:14-cr-110 [Objection to PSR] at 1–3; Doc. 116 in Case No. 1:14-cr-110 [Sentencing Tr.] at 3–10, 15–21.) The Court acknowledged that it was a "close issue," but denied the objection and sentenced Petitioner to a guidelines sentence of 168 months of imprisonment. (Doc. 116 in Case No. 1:14-cr-110 at 21:16–18, 23:11–16; *see also* Doc. 112 in Case No. 1:14-cr-110 at 2.)

Petitioner appealed her sentence to the United States Court of Appeals for the Sixth Circuit. (Doc. 114 in Case No. 1:14-cr-110.) She argued, through counsel, that the undue-influence enhancement was improperly imposed and her sentence was procedurally and substantively

3

unreasonable. (Doc. 124 in Case No. 1:14-cr-110 at 2.) The Court of Appeals affirmed Petitioner's sentence, including the application of the undue-influence enhancement. (*Id.* at 4.)

Petitioner filed a timely 28 U.S.C. § 2255 motion on January 11, 2019, with a memorandum in support. (Docs. 1, 2.) The Government has responded in opposition. (Doc. 8.) Petitioner has not replied, and the time to do so has expired. (*See* Doc. 3 (giving Petitioner thirty days from the filing of the Government's answer to file an optional reply).)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). Thus, "a petitioner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

## III. DISCUSSION

The Court will consider Petitioner's claims in the order in which they arose chronologically: first, the propriety of the grand-jury proceedings (Ground One); second, whether her guilty plea was invalid because it was coerced (Ground Two) or because her conduct did not

4

satisfy the elements of the offense and she was incompetent (Ground Four); and third, whether she received ineffective assistance of counsel as to the sentencing enhancement for undue influence (Ground Three). The Court will then address whether an evidentiary hearing is required.

### A. Ground One: Propriety of Grand-Jury Proceedings

Petitioner argues the grand-jury proceedings were improper because she was not provided with counsel who would have requested immunity for her in exchange for her testimony. (Doc. 1 at 4; Doc. 2 at 1.) She asserts that she was afraid of testifying and her resulting unwillingness to testify led to the grand jury's use of Farmer's testimony to bring criminal charges against her. (Doc. 2 at 1–2.) The Government argues in response that Petitioner's grand-jury argument is insufficiently developed, untimely, and meritless. (Doc. 8 at 4–7.)

Petitioner's argument that she should have been appointed counsel in connection with her grand-jury testimony is sufficiently developed for the Court to consider it. Filings by *pro se* litigants are liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Petitioner has asserted that she had the right to appointed counsel during the grand-jury proceeding, that no such counsel was appointed for her, and that she believes this renders her conviction vulnerable to collateral attack. Under the applicable standard, this is sufficient to allow the Court to consider her argument.

However, the Government is correct that the argument is untimely. Any challenge to an alleged error in a grand-jury proceeding "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial of the merits." Fed. R. Crim. P. 12(b)(3)(A)(v). If a party fails to make such a motion by the deadline, "the motion is untimely[,] [b]ut a court may consider the defense, objection, or request if the party

5

shows good cause." *Id.* 12(c)(3). Petitioner has not sought to make any showing of good cause for her failure to raise this objection before trial. Her claim as to the grand-jury proceedings is therefore untimely.

Even if the claim were timely, it would be without merit. The right to counsel under the Sixth Amendment to the U.S. Constitution does not attach until prosecution against a person commences. *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008). Prosecution commences at "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)). Even the target of a grand-jury investigation has no right to counsel during grand-jury proceedings if those proceedings occur before prosecution commences. *United States v. Myers*, 123 F.3d 350, 359 (6th Cir. 1997) (citing *United States v. Ramsey*, 785 F.2d 184, 193 (7th Cir.)). Because Petitioner has not shown that prosecution against her had commenced before she gave her testimony to the grand jury, she has not shown she was constitutionally entitled to the assistance of counsel at that time. She therefore has not shown "an error of constitutional magnitude" or "an error of . . . law that was so fundamental as to render the entire proceeding invalid." *See Weinberger*, 268 F.3d at 351. Petitioner is not entitled to relief on this ground.

> **B.  Grounds Two and Four: Validity of Guilty Plea**

Petitioner argues her guilty plea was invalid because it was coerced by her attorney, her conduct did not satisfy the elements of the offense, and she was incompetent. (Doc. 1 at 5, 8; Doc. 2 at 2–3, 4–5.) The Government argues Petitioner procedurally defaulted these claims by failing to litigate them on direct appeal. (Doc. 8 at 10–12.) In the alternative, the Government argues Petitioner is bound by her sworn statements during the plea colloquy; her counsel's advice to plead

guilty was not, in any case, deficient; and Petitioner's allegation that she was incompetent is factually unfounded. (*Id.* at 12–14.)

Procedural default occurs when a petitioner has failed to raise a claim on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). If a claim is procedurally defaulted, it cannot be raised in a later collateral challenge, such as a petition under § 2255. *Id.* Under this doctrine, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* at 621. To overcome a procedural default and obtain review of a defaulted claim, a petitioner must show either (1) cause for the failure to raise the claims earlier and actual prejudice from the alleged errors, or (2) actual innocence. *Id.* at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 & 496 (1986)); *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011).

Petitioner concedes that she did not raise any claim as to the validity of her guilty plea on direct appeal. (Doc. 1 at 5, 8.) Petitioner's claims as to the validity of her guilty plea are therefore procedurally defaulted. To overcome this procedural default, Petitioner would have to show either (1) cause for her failure to raise the claims earlier and actual prejudice from the alleged errors, or (2) that she is actually innocent. *Bousley*, 523 U.S. at 622. The Court will first consider whether Petitioner has shown actual innocence, and will then consider cause and prejudice.

### 1. Overcoming Procedural Default Through Actual Innocence

"Actual innocence" for purposes of overcoming procedural default "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In addition, "[i]n cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624; *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011).

7

Petitioner pleaded guilty to Count Four, aiding and abetting the sex trafficking of a minor.[1] (*See* Docs. 23 [Indictment] at 2–3, 46 [Plea Agmt.] ¶ 1, & 63 [Order Accepting Guilty Plea to Count IV] at 1 in Case No. 1:14-cr-110.) To prove the aiding and abetting of any crime under 18 U.S.C. § 2, the prosecution must show "(1) an act by the defendant that contributes to the commission of the crime, and (2) an intention to aid in the commission of the crime." *United States v. Davis*, 306 F.3d 398, 412 (6th Cir. 2002). The crime of sex trafficking of a minor under 18 U.S.C. § 1591 requires that (1) the defendant knowingly benefited, either financially or by receiving anything of value, (2) from participating in a venture which has engaged in the trafficking of a person, meaning "an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means a person," (3) with knowledge or in reckless disregard of the fact that the trafficked person was under eighteen years old and would be caused to engage in a commercial sex act. *United States v. Afyare*, 632 F. App'x 272, 283–86 (6th Cir. 2016).

The Plea Agreement itself establishes Petitioner's aiding and abetting of the sex trafficking of a minor by Farmer. Petitioner introduced two females to her former pimp, Farmer, who created an ad showing the two females were available for sexual services in exchange for money. (Doc. 46 ¶ 4(a).) Petitioner had a reasonable opportunity to observe that the two females were younger than eighteen, and Petitioner in fact doubted that either of the females was eighteen or older. (*Id.* ¶ 4(c).) Petitioner answered a telephone call about Farmer's ad and negotiated for the caller to have sex with two females in exchange for four hundred dollars. (*Id.*) Petitioner went into a hotel

---

[1] Petitioner's offense of conviction is sometimes characterized in the record as sex trafficking a minor or conspiring to commit the sex trafficking of a minor. All three offenses are subject to the same punishment. *See* 18 U.S.C. § 2 (aiding and abetting an offense is punished in the same manner as committing the offense); 18 U.S.C. § 1594(a) (conspiring to commit sex trafficking is punished in the same manner as committing the offense of sex trafficking). In addition, as discussed below, Petitioner's conduct satisfied the elements of all three offenses. Therefore, the Court sees no constitutional notice or fairness issues in this inconsistency.

room with one of the females and the caller, intending that both she and the other female would have sex with the caller in exchange for money. (*Id.* ¶ 4(b).) Petitioner understood that she and the other female would each get a hundred dollars for these commercial sex acts, while Farmer would get two hundred dollars. (*Id.* ¶ 4(d).) In short, by introducing the girls to Farmer, negotiating with a caller for commercial sex with the two girls, and going into the hotel with one of the girls so the two could fulfill her earlier agreement for commercial sex to the financial benefit of both Farmer and Petitioner, Petitioner engaged in acts that contributed to Farmer's sex trafficking of a minor, and she intended that Farmer commit sex trafficking of a minor.

Petitioner argues she was a prostitute in this situation, not a pimp. (*See* Doc. 2 at 2.) But "being a pimp," however that term may be interpreted, is not an element of Petitioner's offense. As discussed above, her admitted conduct met the elements of the offense: she knowingly took actions that contributed to Farmer's sex trafficking of a minor. The fact that Petitioner went into a hotel room with one of the minors intending to prostitute both herself and the minor does not mitigate this conclusion.

The facts set out in the Plea Agreement also support the conclusion that Petitioner conspired to commit sex trafficking of a minor, as charged in Count Two. *See Bousley*, 523 U.S. at 624 ("actual innocence" requires showing of actual innocence as to any more serious indicted charges the government did not pursue). "[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive criminal offense.'" *Ocasio v. United States*, 578 W.S. 282, 287 (2016) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (second alteration in original). "[C]onspirators must 'pursue the same criminal objective,'" but "a conspirator [need] not agree to commit or facilitate each and every part of the substantive offense." *Id.* at 288 (quoting *Salinas*,

9

522 U.S. at 63) (alteration in original). Petitioner's actions as admitted in the Plea Agreement of introducing the girls to Farmer, negotiating the deal with the caller, and going into the hotel to prostitute along with one of the girls so that the deal would not fall through, satisfy the elements of conspiring with Farmer for Farmer to commit sex trafficking of the girls. Petitioner therefore cannot show "actual innocence" as to the conspiracy charged in Count Two.[2]

Petitioner also argues she is not guilty because there is no proof she used force, fraud, or coercion on the minors. (Doc. 2 at 4.) While sex trafficking may be committed through force, fraud, or coercion, regardless of the age of the victim, sex trafficking may also be committed without force, fraud, or coercion if the victim is under eighteen. *See* 18 U.S.C. § 1591 (titled "Sex trafficking of children *or* by force, fraud or coercion" (emphasis added)). In other words, when the crime charged is sex trafficking of a minor, "the government [is] not required to prove force or coercion at all. . . . Instead, the government need only prove that defendant knew, or acted in reckless disregard of the fat, that [the victim' was less than eighteen years old and would be caused to engage in commercial sex acts." *United States v. Mack*, 808 F.3d 1074, 1081 (6th Cir. 2015). Petitioner's argument regarding a lack of proof of force, fraud, or coercion is therefore irrelevant to whether she is actually innocent of aiding and abetting, conspiring for, or committing the sex trafficking of a minor.

Petitioner has not shown actual innocence as an excuse for her procedural default.

---

[2] Nor could Petitioner show actual innocence as to the sex trafficking of a minor, if that crime had been charged in the indictment. Petitioner received the benefit of housing from Farmer in exchange for transporting the minors to be maintained in Farmer's home, with knowledge or in reckless disregard of the fact that the minors were under eighteen and would be caused to engage in a commercial sex act. *See Afyare*, 632 F. App'x at 283–86.

10

## 2. Overcoming Procedural Default Through Cause and Actual Prejudice

The other method of overcoming a procedural default is to show cause and actual prejudice. Petitioner has not shown cause for her failure to raise these claims on direct appeal. In her motion, in answer to the instruction "[i]f you did not raise this issue in your direct appeal, explain why," she wrote, "counsel failed to raise[] on appeal" and "counsel failed to do so." (Doc. 1 at 5, 8.) This assertion by itself, however, is not enough to show cause to overcome a procedural default. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (no cause to overcome procedural default where petitioner asserted he had asked counsel to file an appeal but counsel had not done so). Rather, showing cause generally requires the existence of an impediment that was external to the defense. *Swain v. United States*, 155 F. App'x 827, 830–31 (6th Cir. 2005); *see also Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012) (in habeas action under 28 U.S.C. § 2254, "cause inquiry ordinarily turns on whether some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" (cleaned up)). Because Petitioner has not shown any impediment to raising these claims earlier that was external to the defense, she has not shown cause to overcome to procedural default.

Cause may also exist where there is an attorney error that "rises to the level of constitutionally ineffective assistance of counsel."[3] *Barrow v. United States*, 8 F. App'x 286, 288 (6th Cir. 2001). Petitioner has not expressly argued ineffective assistance of counsel as to the validity of her guilty plea. She has, however, argued that her attorney coerced her into pleading guilty when she was not guilty. (Doc. 2 at 2.) However, as discussed in Section III(B)(1) above, Petitioner's conduct satisfied the elements of both Count Two (conspiracy to commit sex

---

[3] The legal standard for determining whether a defendant has received ineffective assistance of counsel is set out below in Section III(C).

11

trafficking of a minor) and Count Four (aiding and abetting the sex trafficking of a minor). It cannot be said that an attorney who advises her client to plead guilty to one count and obtain the dismissal of another has made an unreasonable error when her client's conduct, in fact, supports a conviction on both counts. Petitioner therefore has not shown cause to excuse the procedural default through any alleged ineffective assistance of her counsel.

Because Petitioner has shown neither cause and prejudice nor actual innocence, she may not proceed on her procedurally defaulted claims as to the validity of her guilty plea.

### C. Ground Three: Sentencing Enhancement

Petitioner argues her counsel failed to argue properly against the sentencing enhancement for undue influence on appeal. (Doc. 1 at 6; Doc. 2 at 3–4.) Petitioner argues she "did not sway or train the females to do anything," and they were already engaging in prostitution and inclined to engage in prostitution before they met Petitioner. (Doc. 2 at 3.)

Claims of ineffective assistance of counsel arise from the following guarantee in the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland*. To establish an ineffective assistance of counsel claim,

> [f]irst the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. Petitioner bears the burden of showing ineffective assistance of counsel. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003). There is a strong presumption counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689 (see *Sims v. Livesay*, 970 F.2d 1575, 1579–80 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

While both prongs must be established in order to meet Petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

The prejudice prong disposes of Petitioner's claim. Petitioner argues that if her counsel had made proper arguments on appeal about Petitioner's lack of influence over the minors, the enhancement would not have been applied. (Doc. 2 at 3–4.) However the Court of Appeals affirmed the imposition of the enhancement on the basis of Farmer's conduct, not Petitioner's:

> The Sentencing Guidelines provide that two levels are added to a defendant's base offense level if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." USSG § 2G1.3(b)(2)(B). "Participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 2G1.3(b)(2)(B), comment. (n.1). Therefore, **it is not necessary for the defendant to personally influence a minor** to engage in prohibited sexual conduct, **as long as a codefendant exercises the requisite undue influence**. See *United States v. Brooks*, 610 F.3d 1186, 1199 (9th Cir. 2010). Because **Morales has conceded that the minors were unduly influenced by her**

13

> **codefendant**, the district court did not err in imposing the undue-influence enhancement.

(Doc. 124 at 3 in Case No. 1:14-cr-110 (emphasis added).) Because the Court of Appeals held that the enhancement applied as a matter of law based on Farmer's conduct, no other or additional argument by Petitioner's counsel about Petitioner's alleged lack of influence over the minors could have changed this result. Petitioner therefore cannot show she was prejudiced by any failure of her counsel to make other or additional arguments about Petitioner's lack of influence over the minors.

Because she has not shown prejudice from her counsel's alleged errors, Petitioner has not shown she received ineffective assistance of counsel as to the undue-influence enhancement.

### D. Evidentiary Hearing

Rule 8(a) of the Rules Governing Section 2255 Proceedings requires a district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 8(a). The burden for establishing entitlement to an evidentiary hearing is relatively light. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

An evidentiary hearing is not required, however, if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017)). Nor does a petitioner's assertion of innocence, without more, entitle him or her to a hearing. *Martin*, 889 F.3d at 832.

14

Case 1:19-cv-00008-CLC-SKL   Document 9   Filed 03/21/22   Page 14 of 16   PageID #: 59

The Court concludes Petitioner is not entitled to an evidentiary hearing. Her grand-jury claim is untimely, her claims as to the validity of her plea are procedurally defaulted, and her claim of ineffective assistance of counsel must fail regardless of any facts she might introduce at a hearing, given the grounds on which the Court of Appeals affirmed the sentencing enhancement.

## IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001).

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing reasonable jurists would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

Here, no reasonable jurist could conclude Petitioner's claims deserve further review. Her grand-jury and plea claims are plainly barred by procedural rules, and Petitioner has failed to make a substantial showing of the denial of a constitutional right as to her sentencing claim. For these reasons, the Court will **DENY** issuance of a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, an evidentiary hearing is unnecessary and Petitioner's § 2255 motion (Doc. 1) will be **DENIED**.

**An appropriate order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**